**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALLIE TRUESDALE**<br>720 Wood Duck Court<br>Middletown, DE 19709<br><br>*Plaintiff,*<br><br>vs.<br><br>**ALBERT EINSTEIN HEALTHCARE**<br>**NETWORK** *d/b/a* **Einstein Medical Center**<br>5501 Old York Road<br>Philadelphia, PA 19141<br>     -and-<br>**THOMAS JEFFERSON UNIVERSITY**<br>*d/b/a* **Jefferson Health**<br>1101 Market Street<br>Philadelphia, PA 19107<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 2:22-cv-01597-JHS<br><br>**JURY TRIAL DEMANDED** |

<u>**FIRST AMENDED CIVIL ACTION COMPLAINT**[1]</u>

Plaintiff, Allie Truesdale (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

<u>**INTRODUCTION**</u>

1.     Plaintiff has initiated this action to redress violations by Einstein Healthcare Network d/b/a Einstein Medical Center and Thomas Jefferson University d/b/a Jefferson Health (*hereinafter* collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). Plaintiff was unlawfully terminated by

---

[1] Plaintiff files this First Amended Civil Action Complaint pursuant to F.R.C.P. 15(a)(2) (written consent of opposing party).

Defendants after Defendants failed to accommodate her, and she suffered damages more fully described/sought herein.

## JURISDICTION AND VENUE

2.    2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.   There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.    3.    This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.    4.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

## PARTIES

5.    The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

6.    Plaintiff is an adult who resides at the above-captioned address.

7.    Albert Einstein Healthcare Network d/b/a Einstein Medical Center (hereinafter "Defendant Einstein") manages a network of hospitals, clinics, and physicians. Defendant Einstein has an address as set forth in the above-caption.

8.    Thomas Jefferson University a/k/a Jefferson Health (hereinafter "Defendant

Jefferson") manages a network of hospitals, clinics, and physicians with an address as set forth in the above caption.

9.      Defendant Jefferson merged with and/or acquired Defendant Einstein in late 2021.[2]

10.     Upon information and belief, at the time of Plaintiff's termination, the above entities (see Paragraphs 8-9), were run as a joint operation and enterprise with employees moving from one entity to another, sharing facilities, with operations being conducted as if a single enterprise.  Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

11.     At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## ADMINISTRATIVE REMEDIES

12.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13.     Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII, the PHRA, and the PFPO.

14.     Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission alleging violations of said statute on December 20, 2021.

15.     Plaintiff's charge was cross-filed with the Pennsylvania Human Relations

---

[2]https://hospitals.jefferson.edu/news/2021/10/einstein-healthcare-network-has-joined-jefferson-health.html#:~:text=PHILADELPHIA%20%E2%80%94%20Jefferson%20Health%20and%20Einstein,care%20forward%20throughout%20Greater%20Philadelphia.

Commission.

16.    The instant action is timely because it was initiated within ninety ("90") days after the receipt of a Right to Sue letter from the EEOC mailed on or about March 11, 2022.

17.    Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

18.    Plaintiff has properly exhausted her administrative proceedings regarding her PHRA claims by dual-filing her Charge of Discrimination with the PHRC and by waiting at least one year since the filing before asserting her PHRA claims.

19.    Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC and the charge has been pending for at least one year. See e.g. *Vandegrift v. City of Phila*., 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

## FACTUAL BACKGROUND

20.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21.    In or about late 2016, Plaintiff was hired by Defendants as an Emergency Room Registered Nurse ("RN").

22.    Plaintiff was considered to be an excellent employee throughout her career; and while working for Defendants.

23.    At all relevant times during her employment with Defendants, Plaintiff suffered from and continues to suffer from serious health conditions, including but not limited to an idiopathic blood-clotting disorder (and other complications), hypercoagulable state, immunodeficiencies, chronic rhinosinusitis, and is required to utilize immune modifying

medications.

24.    As a result of her aforesaid health conditions, Plaintiff experiences blood clotting, nasal obstruction, and facial pain/pressure, which (at times) limits her ability to perform some daily life activities, including but not limited to immune system function, blood flow function, lifting, carrying, standing, and working (among other daily life activities).

25.    Despite her aforesaid health conditions and limitations, Plaintiff was able to perform the duties of her job well with Defendants; however, Plaintiff did (at times) require some reasonable accommodations while employed with Defendants (as discussed infra).

26.    In or about July 2021, Defendants announced they were implementing a "COVID-19 Vaccine Policy," which as a condition of continued employment with Defendants, required all employees to have one of the following before November 29, 2021: (1) one dose of the J&J Covid-19 vaccine; (2) both doses of the Moderna or Pfizer Covid-19 vaccines; or (3) an approved accommodation from receiving the Covid-19 vaccine.

27.    Upon learning of this new policy, Plaintiff informed Defendants' management and Human Resources, including but not limited to, Emergency Flow Coordinator/Clinical Manager, Theresa DiFranco, BSN, RN, CEN (hereinafter "DiFranco"), Emergency Department Nurse Manager, Marshall Bowen, MSN, RN (hereinafter "Bowen"), Human Resources ("HR") Service Specialist, Mike Wilcox (hereinafter "Wilcox"), LiveWell Employee Health Representative, Pattie Gorman (hereinafter "Gorman"), and  Director of HR, Lori Pisarski (hereinafter "Pisarski") that she required reasonable medical accommodations in the form of a medical exemption to the COVID-19 vaccine mandate due to the clotting risk associated with the COVID-19 vaccine.

28.    Two of Plaintiff's treating physicians, Donald M. Sesso, D.O. a specialist, and Glen D. Rosen, M.D. her primary care physician, have advised Plaintiff that she should not receive any

5

COVID-19 vaccine due to her disabilities and severe medical conditions.

29.    As a result, in or about August of 2021, Plaintiff submitted a medical exemption request letter to Defendants' Management.

30.    On or about September 30, 2021, Defendants Management sent Plaintiff Medical Accommodation Request forms for her physician to complete.

31.    On or about October 11, 2021, Plaintiff's Physician completed a Medical Certification for COVID-19 Vaccination Exemption, which listed Plaintiff's disabilities and severe medical conditions and specifically noted: "Pt had several blood clots of unknown origin. Seen by hematology persistent clots," and "Exempt from vaccine due to clotting risk and hypercoagulable state."

32.    Plaintiff submitted this Medical Certification for COVID-19 Vaccination Exemption (a reasonable accommodation under the ADA) to Defendants shortly thereafter and continued to perform her job well for Defendants.

33.    While Plaintiff was still awaiting a determination from Defendants on her aforesaid ADA accommodation/exemption request, she began undergoing twice-weekly at-home COVID-19 testing prior to coming into work for Defendants and continued to work for Defendants.

34.    On November 1, 2021, Defendants emailed Plaintiff denying her request for a reasonable accommodation for her serious health conditions. without any explanation, and cited "multiple, unsuccessful attempts to contact" Plaintiff's physician as the basis for the denial.

35.    That Defendants were not able to contact Plaintiff's physician was patently false, as Defendants had been able to contact Plaintiff's physician, and in fact did contact him (as Defendants later admitted in response to Plaintiff's grievance as discussed infra).

36.    In either event, Defendants completely and utterly failed to engage in the interactive

process with Plaintiff, to: (1) inform her Defendants allegedly could not make contact with her physician to attempt to have Plaintiff assist in the contact; (2) ask Plaintiff herself for additional information or for additional medical records or medical forms as necessary to make a determination regarding her request for a reasonable accommodation; and/or (3) by investigating whether there were any other reasonable accommodations Defendants could have made for Plaintiff.

37.    After this baseless denial of her reasonable accommodation request, Plaintiff followed union grievance procedures and grieved Defendants' decision to deny her the reasonable accommodation request.

38.    On November 22, 2021, a First Step Grievance meeting was held via telephone with Defendants' Management and Human Resources as well as Plaintiff and her union representative.

39.    During this meeting, Defendants' Management and Human Resources were rude and cold towards Plaintiff, and when Plaintiff's union representative inquired into whether there were any other options for Plaintiff (beyond getting the Covid-19 vaccine which her doctors advised her not to take due to her severe medical conditions) because he was aware Defendants had made exemptions for other employees, Pisarski (Defendants' Director of HR) responded by stating: "Allie's choice is either get the vaccine, or that's it."

40.    On or about November 24, 2021, Pisarski wrote a letter to Plaintiff, denying her grievance, and demanded Plaintiff receive her first Covid-19 vaccination dose by November 29, 2021.

41.    This denial of her grievance came again after a total failure to engage in the interactive process or any attempt to work with Plaintiff regarding any other potential

accommodation Defendants could have offered Plaintiff.

42.     Plaintiff would have agreed to continue to get twice weekly testing as she had prior to her termination (or more frequent testing if requested by Defendants), wear masks and other PPE, or any other precautionary measure as requested if Defendants had given her the opportunity or benefit of the interactive process as is required under the ADA.

43.     Defendants did not engage in the interactive process and thereafter, on or about November 30, 2021, Defendants terminated Plaintiff's employment.

44.     Upon information and belief, following Plaintiff's termination, in or about December of 2021, Defendants began deferring enforcement of the Covid-19 vaccine mandate for employees.  Nonetheless, Plaintiff was not returned to work or reinstated into her position at Defendants.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including but not limited to immune system function, blood flow function, lifting, carrying, standing, and working (among other daily life activities).

47.     Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

48.    Plaintiff requested reasonable accommodations from Defendants, including but not limited to an exemption from a COVID-19 vaccine mandate, and submitted to Defendants a Medical Accommodation Request form completed by her treating physician.

49.    Plaintiff kept Defendants' management informed of her serious medical conditions and need for accommodations.

50.    Defendants denied her request for a reasonable accommodation without providing any legitimate reason as to why or engaging in the interactive process as required under the ADA.

51.    Plaintiff was terminated on or about November 30, 2021, for failing to comply with Defendants COVID-19 vaccine mandate, because of her serious health conditions.

52.    Upon information and belief, shortly thereafter in or about December of 2021, Defendants deferred implantation of the Covid-19 vaccine mandate for current employees yet did not reinstate Plaintiff or call her back to work.

53.    Plaintiff believes and therefore avers she was terminated (1) because of her serious health conditions; (2) in retaliation for requesting a reasonable medical accommodation; and (3) Defendants complete and utter failure to accommodate Plaintiff by failing to engage in any interactive process to determine whether they could accommodate her (set forth supra).

54.    Plaintiff further believes and therefore avers that Defendants discriminatorily and retaliatorily failed to reinstate Plaintiff's employment with Defendants even after it began deferring implementation of its Covid-19 vaccine mandate following Plaintiff's termination.

55.    These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

56.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

57.     Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

58.     The aforesaid allegations in Count I also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in her previous claims.

**COUNT III**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Retaliation; and [3] Failure to Accommodate)**
**-Against All Defendants-**

59.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.     Plaintiff properly exhausted his administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC and the charge has been pending for at least one year. See e.g. *Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

61.     The aforesaid allegations in Count I also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims as set forth in her previous claims.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

      C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

      D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

      E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

      F.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:   _/s/ Allison A. Barker_
Ari R. Karpf, Esq.
Allison A. Barker, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  January 30, 2023