IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIE TRUESDALE, | |
|               Plaintiff, | CIVIL ACTION |
|    v. | NO. 22-1597 |
| ALBERT EINSTEIN HEALTHCARE NETWORK D/B/A EINSTEIN MEDICAL CENTER AND THOMAS JEFFERSON UNIVERSITY, | |
|               Defendants. | |

**OPINION**

**Slomsky, J.**                                                                                    **January 29, 2024**

## I.      INTRODUCTION

This action arises out of a mandatory COVID-19 vaccination policy.  On January 30, 2023, Plaintiff Allie Truesdale ("Plaintiff") filed an Amended Complaint against Albert Einstein Healthcare Network d/b/a Einstein Medical Center ("Defendant Einstein Medical") and Thomas Jefferson University d/b/a Jefferson Health ("Defendant Jefferson Health") (collectively "Defendants") alleging that Defendants discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practice Ordinance, Phila. Code § 9-1101 et seq. ("PFPO") when she refused to comply with Defendants' mandatory COVID-19 vaccination policy.

On June 14, 2023, Defendants filed a Motion for Summary Judgment.  (Doc. No. 30.) On July 13, 2023, Plaintiff filed a Response in Opposition to Defendants' Motion.  (Doc. No. 33.)  On July 27, 2023, Defendants filed a Reply.  (Doc. No. 38.)  For the reasons set forth below,

Defendants' Motion for Summary Judgment (Doc. No. 30) will be granted in part and denied in part.

## II.     BACKGROUND

Defendant Einstein Medical Center and Defendant Jefferson Health are health systems made up of a network of hospitals.  (Doc. No. 19 at ¶¶ 7-8; Doc. No. 30-1 at 12.)  On October 4, 2021, Defendant Einstein Medical Center and Defendant Jefferson Health merged.  (Doc. No. 30-1 at 12, n.1.)

In 2016, Plaintiff began working at Defendant Einstein Medical Center's Emergency Department as a full-time registered Nurse ("RN").  (Doc. No. 19 at ¶ 21.)  As an RN in the Emergency Department, Plaintiff treated and had direct physical contact with many different types of patients including pediatric patients and immunocompromised patients.  (Doc. No. 30-2 at 2.)

In 2018, Plaintiff switched from working full-time to working per diem shifts.[1] Additionally, in late 2017 or early 2018, Plaintiff sought leave under the Family and Medical Leave Act ("FMLA").  (Doc. No. 33-1 at 1.)  Plaintiff maintains that she sought leave under the FMLA because of "autoimmune related disabilities" that "cause her joint pain, fatigue, muscle aches and pain."  (Id.)

On January 9, 2019, Plaintiff underwent an endoscopic sinus surgery.  (Id. at 3.) Following the surgery, Plaintiff began experiencing pain in her left calf.  (Id.)  On January 18, 2019, Plaintiff was admitted to the Emergency Room where she was diagnosed with a blood clot.

---

[1]     In her deposition, Plaintiff describes per diem status as working shifts "as needed" within a six-week schedule.  (Doc. No. 30-3 at 6.)  Further, Plaintiff stated that her decision to work per diem was related to an incident where she was attacked by a patient's family member. Therefore, Plaintiff's decision to work less hours at Einstein Medical Center was not for medical reasons but rather for her safety concerns.

(Id.)  Dr. Donald Sesso, Plaintiff's Ear, Nose, and Throat ("ENT") physician, referred her to Dr. Felice LePar, a hematologist.  (Id.)  Dr. LePar could not pinpoint the cause of Plaintiff's blood clot.  (Id. at 4.)  Since then, Plaintiff has not been diagnosed with another blood clot.  (Id.)  Nonetheless, Plaintiff claims that she has had "issues and collateral damage stemming from her blood clotting disorder."  (Id. at 2.)  Plaintiff maintains that her blood clotting disorder causes her pain, numbness, tingling, and swelling, which affects her ability to work.  (Id.)  In addition to her blood clotting disorder, Plaintiff claims that her autoimmune related disabilities similarly cause her pain, aches, and fatigue.  (Id.)

### A.    Defendants' COVID-19 Vaccination Policy and Exemption Process

On August 16, 2021, Defendant Einstein Medical Center implemented a COVID-19 vaccination policy requiring all employees to receive either the Johnson and Johnson vaccine ("J&J vaccine"), or a Pfizer or Moderna mRNA vaccine ("mRNA vaccines").  (Doc. No. 30-1 at 10.)  If an employee failed to receive a COVID-19 vaccine by October 15, 2021, they would be terminated.  (Id. at 14-15.)  However, if an employee required an accommodation due to a medical condition or a sincerely held religious belief, they could apply for an exemption.  (Id. at 10.)

To accommodate a request for a vaccine exemption due to a medical condition, Defendants provided employees with a medical exemption form to complete.  (Doc. No. 30-2 at ¶ 31.)  The form required a healthcare provider to state a medical reason why the employee could not obtain a COVID-19 vaccine.  (Id. at ¶ 32.)  After an employee submitted a completed form, a medical exemption panel ("Exemption Panel") would review the request.  (Id. at ¶ 33.)  The Exemption Panel was comprised of Einstein physicians and leaders, including an infectious disease physician, an emergency physician, two physicians from Einstein's ethics committee,

Einstein's Chief Medical Officer, Einstein's Chief Quality Officer, and the Director of Occupational Health.  (Id. at ¶¶ 34-35.)

Once received by the Exemption Panel, the exemption requests were anonymized.  (Id. at ¶ 36.)  When reviewing exemption requests, the Exemption Panel followed a two-step process. First, the Exemption Panel would determine whether the employee had a contraindication to the COVID-19 vaccine, which were set forth by the Centers for Disease Control and Prevention ("CDC").  (Doc. No. 30-1 at 10.)  Second, if a request was not based on an accepted CDC contraindication, the Exemption Panel would contact the healthcare provider who completed the exemption request form to determine whether the healthcare provider believed the employee's request was medically necessary.  (Id.)

### B.  Plaintiff's Exemption Request

After Defendants implemented the vaccine mandate, Plaintiff submitted an exemption form, which requested a medical exemption due to an idiopathic blood blotting disorder.  (See Doc. No. 33-4 at 148.)  Dr. Sesso completed the medical certification and stated that Plaintiff suffered from an "idiopathic clotting disorder, immunodeficient[cy], chronic rhinosinusitis, and nasal polyps."  (Id.)  He further certified that she "had several blood clots of unknown origin" and should be "exempt from the vaccine due to clotting risk and hypercoagulable state."  (Id.)

The Exemption Panel reviewed Plaintiff's request and found that her request did not meet the criteria for the CDC contradictions.[2]  (Doc. No. 30-1 at 17.)  Following their review process protocol, the Exemption Panel attempted to contact Dr. Sesso to obtain additional information. (Doc. No. 30-2 at ¶ 62.)  On November 1, 2021, after some unsuccessful attempts to speak with

---

[2]   According to Defendants, at the time of Plaintiff's exemption request, blood clots were a concern for the J&J vaccine but not for the mRNA vaccine.  (Doc. No. 30-1 at 17.) Therefore, Plaintiff's request did not meet a CDC contraindication.  (Id.)

Dr. Sesso, the Exemption Panel denied Plaintiff's request.  (Doc. No. 33 at ¶ 46.)  On November 4, 2021, the Exemption Panel was able to contact Dr. Sesso and discuss Plaintiff's exemption form.  (Id. at ¶ 51.)  Following that conversation,[3] the Exemption Panel proceeded with its original denial.  (Doc. No. 30-1 at 18.)

Plaintiff filed a grievance challenging the denial of her accommodation request and on November 22, 2021, a grievance hearing took place.  (Id.)  Lori Pisarski, Einstein's Associate Vice President of Human Resources, heard the grievance and Plaintiff, Plaintiff's union representative, and a Human Resource Specialist attended the hearing.  (Id.)  Plaintiff did not submit additional information in support of her exemption request.[4]  Pisarski reached out to Dr. Sachinwalla, who was on the Exemption Panel, to obtain the Panel's reason for the denial of Plaintiff's request.  (Doc. No. 30-2 at 10.)  Plaintiff disputes this outreach and states that Dr. Sachinwalla's own deposition testimony shows that Pisarski never reached out to him after the grievance hearing.  (Doc. No. 33-1 at 9.)

Pisarski ultimately denied Plaintiff's grievance "based on her conversation with Dr. Sachinwalla."  (Doc. No. 30-2 at ¶ 76.)  On November 29, 2021, Plaintiff received an email reiterating that anyone who failed to comply with the vaccine mandate would be terminated the next day.  (Id. at ¶ 78.)  Plaintiff responded to this email stating that she is "unable to receive the

---

[3]   The facts surrounding what was said during this conversation are disputed.  According to Defendants, Dr. Sesso "provided no medical reason why [Plaintiff] could not obtain the mRNA vaccine and understood the panel's reasoning for its denial decision."  (Doc. No. 30-2 at ¶ 66.)  Plaintiff, on the other hand, argues that during this conversation Dr. Sesso maintained his recommendation that Plaintiff should be exempt from the vaccine and that he did not recommend that Plaintiff receive an mRNA vaccine."  (Doc. No. 33-1 at 7-8.)

[4]   This is a point of contention between the parties.  According to Defendants, Pisarski made clear that she was there to gather any additional information and Plaintiff did not provide additional information.  (Doc. No. 30-2 at 10-11.)  According to Plaintiff, Pisarski did not request any additional documentation from Plaintiff.  (Doc. No. 33-1 at 9.)

vaccine due to a history of blood clots." (Id. at ¶ 79.)  On November 30, 2021, Plaintiff was terminated.  (Id. at ¶ 80.)  Plaintiff's termination letter stated "[o]ur records show that you have not been vaccinated as required.  As a result, please be advised that your employment is being terminated."  (Id. at ¶ 81.)

On April 25, 2022, Plaintiff initiated this action.  (Doc. No. 1.)  On January 30, 2023, Plaintiff filed an Amended Complaint.  (Doc. No. 19.)  Defendants now move for summary judgment.  (Doc. No. 30.)

## III.   STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata, 511 F. App'x at 158.   Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Liberty Lobby, 477 U.S. at 248. In ruling on Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient. Id. at 252. Enough evidence must exist such that a jury could reasonably find for Plaintiff. Id. Plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez, 585 F.3d at 771.

## IV.   ANALYSIS

In the Amended Complaint, Plaintiff alleges that Defendants (1) discriminated against her on the basis of her disability, (2) failed to accommodate her, and (3) retaliated against her in

violation of the ADA (Count I), PHRA (Count II), and PFPO (Count III).[5]  (See Doc. No. 19.)
Defendants move for summary judgment on all three claims.  Defendants also argue that they are
entitled to summary judgment as to Plaintiff's PFPO claims because she failed to exhaust her
administrative remedies.  (Doc. No. 30-1 at 38.)  Finally, Defendants argue that they are entitled
to summary judgment on Plaintiff's claim for punitive damages because there was no showing
that Defendants acted with malice or reckless indifference.  (Id. at 39.)  The Court will evaluate
these arguments in turn.

### A.  Summary Judgment Will be Denied on Plaintiff's Discrimination Claim

First, Plaintiff alleges that Defendants discriminated against her on the basis of her
disability.  The ADA mandates that an employer may not "discriminate against a qualified
individual on the basis of a disability."  41 U.S.C. § 12112(a).  To state a prima facie claim of
discrimination under the ADA, a plaintiff must allege that (1) she has a disability, (2) she is a
"qualified individual," and (3) the defendant discriminated against her because of her disability.
Eshelman v. Patrick Indus., Inc., 961 F.3d 242, 245 (3d Cir. 2019) (citing Taylor v. Phoenixville
Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

### 1.    There is a Genuine Dispute as to Whether Plaintiff has a Disability

Under the ADA, a person has a disability if she has "a physical or mental impairment that
substantially limits one or more major life activities," or has "a record of such an impairment," or

---

[5]    The Court will analyze Plaintiff's PHRA and PFPO claims under the ADA framework.  See
Bialko v. Quaker Oats Co., 434 F. App'x 139, n.5 (3d Cir. 2011) ("The analytical framework
used to evaluate a disability discrimination claim under the PHRA is effectively
indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and
PHRA claims on the same grounds"); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d
Cir. 2002) ("The PHRA is basically the same as the ADA in relevant respects and
"Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts"
(internal citations omitted)); Jones v. Children's Hosp. of Philadelphia, No. CV 17-5637,
2019 WL 2640060, at *11 (E.D. Pa. June 27, 2019) (noting courts apply the same framework
for ADA and PFPO claims.).

is "regarded as having such an impairment." <u>See</u> 42 U.S.C. § 12102(1).  "[A]n impairment 'substantially limits' a major life activity if it 'limits the ability of an individual to perform a major life activity as compared to most people in the general population.'"  <u>Adams v. Hanover Foods Corp.</u>, No. 1:21-CV-909, 2022 WL 986014, at *4 (M.D. Pa. Mar. 31, 2022) (citing 29 C.F.R. § 1630.2(1)(ii).  Major life activities include walking, standing, sitting, reaching, lifting, bending, learning, concentrating, thinking, communicating, interacting with others, and working. <u>See</u> 42 U.S.C. § 12102(1).  Consequently, "merely having an impairment does not make one disabled for purposes of the ADA."  <u>Govan v. Amazon, Inc.</u>, No. CV 22-4403, 2022 WL 17869187, *3 at n.3 (E.D. Pa. Dec. 22, 2022) (citing <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184, 195 (2002)).

Here, there are issues of material fact regarding whether Plaintiff is disabled.  According to Plaintiff, she is disabled.  (Doc. No. 33 at ¶ 17.)  She alleges that her disabilities include an autoimmune disorder, an idiopathic blood clotting disorder, and chronic rhinosinusitis.  (<u>Id.</u>) Plaintiff claims that her blood clotting disorder causes "pain, numbness, tingling, and swelling" that affects her ability to work.  (<u>Id.</u> at ¶ 23.)  She claims that her blood clotting disorder causes intermittent swelling which results in numbness, tingling, and a decreased sensation in her left leg which makes it difficult to walk, sit, or stand.  (<u>Id.</u> at ¶ 24.)

According to Defendants, Plaintiff is not disabled, and she failed to "name any activities that she could not perform."[6]  (Doc. No. 30-2 at ¶ 25.)  Defendants also argue that Plaintiff has never been unable to work due to her condition while Plaintiff maintains that she has difficulty

---

[6]   Defendants question Dr. Sesso's certification that Plaintiff has an idiopathic blood clotting disorder.  Defendants argue that Plaintiff only suffered one blood clot in 2019, had no blood clot issue since, and has no family history of a blood clotting disorder.  Defendant further challenges Dr. Sesso's certification by highlighting he is an ENT doctor, not a hematology doctor.  These arguments raise issues of credibility which may not be considered at this stage of the litigation.

working due to her blood clotting disorder.  Thus, the extent of the effect of Plaintiff's blood clotting disorder on her ability to work and other major life activities is in dispute.  Accordingly, there are genuine factual disputes of material fact as to whether Plaintiff is disabled.

  **2. There is also a Genuine Dispute as to Whether Plaintiff is a Qualified Individual**

  As noted above, to succeed on a discrimination claim under the ADA, a plaintiff also must show that she is a "qualified individual."  An individual is qualified if she "(1) 'has the requisite skill, experience, education and other job-related requirements' and (2) 'with or without reasonable accommodation, can perform the essential functions of that position.'"  Lassiter v. Children's Hosp. of Philadelphia, 131 F. Supp. 3d 331, 350 (E.D. Pa. 2015) (quoting Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612 (3d Cir. 2006)).

  Here, there are genuine disputes of material fact regarding whether Plaintiff is a qualified individual.  According to Defendants, Plaintiff is not a qualified individual because she poses a direct threat to the health and safety of other individuals in the workplace.  (Doc. No. 30-1 at 24.) In support of this argument, Defendants argue that as a RN in the Emergency Department, Plaintiff treats at-risk patients, and her unvaccinated status poses a direct threat to their safety. (Id. at 25-26.)

  According to Plaintiff, she is a qualified individual because she satisfies the educational prerequisites for the position and she is not a direct threat to others in the workplace.  (Doc. No. 33-2 at 17-18.)  In particular, Plaintiff argues that during her employment with Defendants she complied with all precautionary measures to limit the potential spread of COVID-19 including wearing proper protective gear, distancing when possible, and conducting regular at-home COVID-19 testing.  (Id. at 19.)  Further, Plaintiff points to the fact that she was permitted to continue working for four months while her exemption request was pending.  This shows that

Defendants did not believe she posed a direct threat to the safety of patients.  (Id.)  Further, Defendants granted 230 exemptions that allowed non-vaccinated employees to continue working.  (Id. at 23.)  The Court recognizes that unvaccinated individuals' interaction with at-risk patients may place them at risk; however, there are genuine disputes raised as to whether Plaintiff posed such a risk and if it could be reduced through reasonable accommodation.  For all these reasons, there is a genuine dispute of material fact as to whether Plaintiff is a qualified individual under the ADA.

### B.  Summary Judgment Will be Denied on Plaintiff's Failure to Accommodate Claim

Next, Plaintiff alleges that Defendants failed to offer her a reasonable accommodation for her disability by denying her medical exemption request.  Failure to provide a reasonable accommodation is unlawful discrimination under the ADA.  42 U.S.C. § 12112(b)(5)(A).  A plaintiff alleging unlawful accommodation discrimination under the ADA must show that (1) she is disabled, (2) she is qualified to perform the essential functions of her job, and (3) her employer refused to provide her with a proposed reasonable accommodation or failed to engage in the interactive process after she requested an accommodation, even though a reasonable accommodation was possible.  Solomon v. Sch. Dist. of Philadelphia, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012).  Engaging in an "interactive process" requires reasonable efforts, on the part of an employer, to assist the employee and to communicate with the employee in good faith.  Megine v. Runyon, 114 F.3d 415, 419-20 (3d Cir. 1997).  However, an "employer cannot be faulted if after conferring with the employee…the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999).

As described above, there is a genuine dispute of material fact as to whether Plaintiff is disabled and whether she is qualified to perform the essential functions of her job. Additionally, there is the same dispute as to whether Defendants engaged in an interactive process with Plaintiff. Defendants' procedure for reviewing medical exemption requests has been described above. Pursuant to that procedure, Defendants attempted to reach Dr. Sesso to discuss the details of Plaintiff's exemption form. Defendant was unable to reach Dr. Sesso and proceeded to deny Plaintiff's request for an exemption. Plaintiff alleges that prior to denying her an exemption, Defendants failed to contact her to determine whether she could assist in connecting Defendants with Dr. Sesso or in providing additional information or documentation. (Doc. No. 33 at ¶ 49.) Further, Defendants argue that once they were able to reach Dr. Sesso, he withdrew his recommendation that Plaintiff should not receive the vaccine. According to Plaintiff, Dr. Sesso did not withdraw his recommendation.

Further, there are genuine disputes as to whether Defendants engaged in the interactive process with Plaintiff during her grievance meeting. According to Plaintiff, the Exemption Panel did not participate in her grievance hearing, she was not asked to put forth any additional information, and Lori Pisarski was "dismissive and abrupt." (Doc. No. 33 at ¶¶ 63-65.) Further, Plaintiff claims that when Pisarski was asked if there were any options for Plaintiff, Pisarski responded that Plaintiff's only option was to receive the vaccine. On the other hand, Pisarski denies making that statement to Plaintiff. Further, Defendants claim that Plaintiff was given the opportunity to provide additional information at her grievance hearing but chose not to.

As noted, it is not the Court's task to resolve issues of credibility at the summary judgment stage of litigation. Accordingly, the Court is not permitted to decide which party to believe on whether Plaintiff had a disability or whether Defendants engaged in an interactive

process.  Here, Plaintiff's claim for failure to accommodate requires a showing that she is disabled and that her employer failed to engage in the interactive process after she requested an accommodation.  Both are in dispute and both involve material facts.  Thus, summary judgment on the ADA claim in favor of Defendants is not appropriate.

### C.  Summary Judgment Will be Granted on Plaintiff's Retaliation Claim

Third, Plaintiff alleges that Defendants retaliated against her for requesting a medical exemption.  To establish a prima facie case of retaliation under the ADA, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Arana v. Temple Univ. Health Sys., No. CV 17-525, 2018 WL 2063600, at *8 (E.D. Pa. May 3, 2018), aff'd, 776 F. App'x 66 (3d Cir. 2019).

Here, Defendants do not dispute that Plaintiff engaged in a protected activity or that she was subject to an adverse employment action.  (Doc. No. 30-1 at 33.)  However, Defendants dispute that there is a casual connection between her termination and her request for an exemption.  According to Defendants, they implemented their vaccine policy, Plaintiff applied for an exemption, Defendants denied her request, Plaintiff acknowledged that she would remain unvaccinated, and Defendants terminated Plaintiff for not receiving the required vaccine.  (Id. at 34-35.)  Plaintiff does not dispute these facts.  Instead, Plaintiff argues in conclusory fashion that Defendants' decision to terminate Plaintiff "as a direct result of their refusal to accommodate her reasonable request for an accommodation" is itself evidence of retaliation.  (Doc. No. 33-2 at 26-27.)  Plaintiff further argues that Pisarski being "cold and rude" to Plaintiff during her grievance hearing is sufficient circumstantial evidence of retaliation.  (Id. at 32.)  Finally, Plaintiff asserts

that because Defendants granted some exemption requests to other employees, an inference of retaliation may be drawn due to their denial of her request.  (Id. at 35-37.)

There is no genuine dispute of material facts.  Plaintiff merely restates the undisputed fact that Defendants denied her request for an exemption and terminated her after she failed to comply with the vaccine mandate.  In this regard, Plaintiff has failed to raise any facts that suggest a retaliatory motive by Defendants.

Further, even if Plaintiff could make a prima facie case, Defendants articulated a legitimate, non-retaliatory reason for the challenged employment action.  According to Defendants, Plaintiff was terminated due to her failure to comply with the employer's policy to obtain a COVID-19 vaccination.  This policy is neutral, applies to all employees, and the consequence of termination applies to all employees who fail to get vaccinated regardless of if they choose to file an exemption request.  Courts have stated that a "[v]iolation of an employer's policy is a legitimate, nondiscriminatory reason for discharge."  Reid v. Temple Univ. Hosp. Inc., No. CV 17-2197, 2019 WL 3857999, at *6 (E.D. Pa. Aug. 15, 2019).  Here, Plaintiff has failed to dispute the evidence that Defendants terminated her employment due to her failure to comply with the vaccine policy.  Plaintiff has failed to put forth any evidence that Defendants retaliated against her for filing an exemption request.  Instead, the undisputed factual evidence supports the conclusion that Defendants fired Plaintiff for failing to comply with Defendants' vaccine mandate.  Therefore, summary judgment is appropriate on Plaintiff's retaliation claim.

### D.  Plaintiff Did Not Fail to Exhaust her Administrative Remedies on her PFPO Claim

In their Motion, Defendants argue that Plaintiff's claims under the Philadelphia Fair Practice Ordinance ("PFPO") fail because she failed to exhaust her administrative remedies. (Doc. No. 30-1 at 38.)  In the Amended Complaint, Plaintiff submits that she properly exhausted

her administrative remedies regarding her PFPO claim because she timely filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC").  (Doc. No. 19 at ¶ 19.)  "Courts in [the Third] Circuit hold the exhaustion requirement is satisfied by filing a complaint with another administrative body as long as the claims under the [PFPO] are predicated upon the same facts as the claims before the administrative body."  Vandegrift v. City of Philadelphia, 228 F. Supp. 3d 464, 481 (E.D. Pa. 2017).  In Higgins v. MetLife Inc., the court found:

> [I]n the absence of any explicit administrative exhaustion requirement requiring a plaintiff to invoke PFPO procedures by filing a complaint with the Philadelphia Commission before pursuing PFPO claims in court, this Court finds persuasive the long-established line of cases determining that filing a complaint with the PHRC and/or EEOC is sufficient to satisfy administrative exhaustion under the PFPO, at least where subsequent PFPO claims are fairly within the scope of the prior administrative complaints.

Higgins v. MetLife Inc., No. CV 22-3714, 2023 WL 5309893, at * 8 (E.D. Pa. Aug. 17, 2023) (referring to Ives v. NHS Hum. Servs., Inc., No. 2:15-CV-5317-JCJ, 2016 WL 4039644, at * 4 (E.D. Pa. July 28, 2016)).  Further, Courts have held that "the Philadelphia City Council intended [that] claims under the [PFPO] satisfy an administrative exhaustion requirement, which can be satisfied by filing a complaint with another administrative body."  Vandegrift, 228 F. Supp. 3d. at 482.  Since Plaintiff filed a claim with the PHRC that is predicated upon the same facts as the claims as her PFPO claim, she has properly exhausted her remedies for her PFPO claim.

### E.  Summary Judgment Will be Denied as to Plaintiff's Request for Punitive Damages

Finally, Defendants argue that Plaintiff is not entitled to punitive damages.  (Doc. No. 30-1 at 39-40.)  Under the ADA, a plaintiff may recover punitive damages if she demonstrates that "her employer's discriminatory conduct was performed with malice or reckless indifference to h[er] federally protected rights."  Denham v. Children's Hosp. of Philadelphia, No. CV 19-0794,

2020 WL 3829228, at *4 (E.D. Pa. July 8, 2020). "'Malice' and 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that its conduct is discriminatory." Id. (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999)). Punitive damages are also recoverable under the Philadelphia Fair Practice Ordinance ("PFPO"); however, "to collect punitive damages under Pennsylvania law [a plaintiff] must demonstrate that the conduct of the defendant was 'outrageous because of the defendant's evil motive or [its] reckless indifference to the rights of others.'" Id. (quoting Feld v. Merriam, 485 A.2d 742, 746–47 (Pa. 1984)).[7]

According to Defendants, there is no evidence that they had any knowledge that their actions may have violated federal law. (Doc. No. 30-1 at 40.) Rather, Defendants argue, they implemented a uniform vaccination policy that was applicable to all employees following guidance from the Philadelphia Department of Public Health. (Id.) According to Plaintiff, Defendants acted with malice or reckless indifference when they "ignored her treating physician's recommendation that she not be required to get the COVID-19 vaccination," that they "never spoke directly with [Plaintiff] and did not take into consideration the ADA whatsoever," and they failed to engage in the interactive process with Plaintiff. (Doc. No. 33-2 at 44.)

As discussed above, there are genuine disputes of fact as to whether Defendants' discriminated against Plaintiff and failed to engage in the interactive process. Moreover, in deciding whether a jury should award punitive damages, the Court must assess the trial evidence. Therefore, viewing the evidence in the light most favorable to Plaintiff, granting summary

---

[7]   Plaintiff is not entitled to punitive damages under the PHRA. See Denham v. Children's Hosp. of Philadelphia, No. CV 19-0794, 2020 WL 3829228, at *4 (E.D. Pa. July 8, 2020) ("The PHRA does not provide for the recovery of punitive damages.").

judgment in favor of Defendants on Plaintiff's request for punitive damages is not appropriate at this time.

**V.     CONCLUSION**

For all the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 30) will be granted in part and denied in part.  An appropriate Order follows.